# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **KAYMARIE WILLIAMS,** | } } } } } | |
| **Plaintiff,** | } } } | |
| **v.** | } } } | **CIV. ACTION NO. 1:25-CV-02034** |
| **GEORGETOWN UNIVERSITY,** | } } } | **THE HONORABLE ANA C. REYES** |
| **Defendant.** | } } } } } | |

## THIRD AMENDED COMPLAINT

Plaintiff Kaymarie Williams, by and through counsel, alleges the following:

I. INTRODUCTION

1. This action arises out of Georgetown University's unlawful discrimination, retaliation, and failure to accommodate the Plaintiff on the basis of her veteran status, disability, and pregnancy, in violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA) 38 U.S.C. §§ 4301-4335, Americans with Disabilities Act (ADA) 42 U.S.C. §12101 et al, Pregnant Workers Fairness Act (PWFA), and Title VII of the Civil Rights Act of 1964, District of Columbia Human Rights Act (DCHA), and Protecting Pregnant Workers Fairness Act of 2014 (PPWFA).

2. Georgetown University unlawfully failed to reinstate Plaintiff to her former position or a substantially equivalent position upon her return from military service, failed to engage

in a good faith interactive process, and retaliated against her for asserting her statutory rights.

## II. JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3) and pursuant to D.C. Code § 11-921, because all claims are also based on violations of the laws of the District of Columbia.

4. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is in the District of Columbia and the unlawful employment practices alleged herein occurred in this District.

## III. BACKGROUND

   A.  Parties

5.  Plaintiff Kaymarie Williams is a disabled U.S. Army veteran, with an exemplary career, who resides in Fort Belvoir, Virginia.  She has an Educational Doctorate in Organizational Leadership, an MBA in Leadership, a Graduate Certificate in Human Resources, a Bachelor of Arts in English & Mass Communications along with over a decade of experience in coaching, teaching, and higher education administration.

6.  As documented in a February 11, 2025, reasonable accommodation request to Defendant, Plaintiff's known disabilities including multiple service-connected disabilities, including major depressive disorder, degenerative disc disease, cervical and lumbar radiculopathy, shoulder strain with joint instability, bilateral foot and ankle conditions (and several others). Exhibit 1 at 51.

7. Defendant Georgetown University is a private institution of higher education located in Washington, D.C, and has over 500 employees.

8. Plaintiff honorably served in the U.S. Army National Guard from 2018 until she was honorably discharged in 2024 because of her permanent disability. *Id.* at 233.

9. On August 1, 2021, because of her resume and prior experience as a professional track and field athlete, Plaintiff was hired as the Associate Head Coach for Women's Track & Field/Cross Country ("Associate Coach") at Georgetown University.

B. Military Leave and Reinstatement Notice

10. On January 13, 2023, Shawn Hendi, Defendant's Senior Associate Athletic Director, informed Katie Porter ("Ms. Porter"), Defendant's Senior Human Resources Business Partner, that Plaintiff had returned from maternity leave/disability and had military orders for a 3-year commitment in North Carolina. *Id.* at 223.

11. On January 30, 2023, Ms. Porter emailed Plaintiff and her first line supervisor, Head Coach Alton McKenzie, confirming the military leave and stating the department could hire a temporary replacement during her absence. *Id.* at 220.

12. The January 30, 2023, email also noted that Plaintiff:

1. Must re-engage with the Defendant within 90 days of her military service ending to state her intent to return to on-campus work; and,

2. The Defendant would work with her to re-employ her. *Id.*

13. Effective February 1, 2023, Plaintiff commenced a period of Military Leave. *Id.*

C. Request for Reinstatement and Initial Communication

13. In March 2024, Plaintiff disclosed to Coach McKenzie, her first line supervisor, that she was pregnant and was anticipating being discharged from the military because of a

3

permanent disability, and the disability impacted her mobility, so she was unsure how the injury would impact her role as Associate Head Coach. In response, Coach McKenzie informed her he would speak to Ms. Porter about Plaintiff's disability, and instructed Plaintiff to contact Ms. Porter so that Ms. Porter can provide her guidance on next steps to reinstatement and addressing her disability. These disclosures obligated Defendant to engage in the interactive process and consider reasonable accommodation under ADA 42 U.S.C. § 12112(b)(5)(A) and PWFA 42 U.S.C. § 2000gg-1.

14. On March 30, 2024, Plaintiff was honorably discharged from the military based on permanent disability. *Id.* at 233.

15. On April 4, 2024, Plaintiff emailed Ms. Porter, informing her of the discharge. *Id.* at 10.

16. The April 4, 2024, email also noted Plaintiff's awareness that Coach McKenzie had someone in the Associate Head Coach of Track & Field/Cross Country role and asked if there were any available positions at Georgetown University or any options for returning to work. *Id.*

17. On April 5, 2024, Ms. Porter acknowledged Plaintiff's interest in returning to work and asked:

      a. If Plaintiff was currently available to begin work.

      b. For a copy of Plaintiff's military discharge papers.

      c. Noted that coaching positions are on-campus roles and require her to be onsite. *Id.* at 14.

18. On April 5, 2024, Plaintiff responded, attaching her discharge paperwork (DD 214, RET ORD), which expressly states that Plaintiff was permanently disabled, and resume, stating:

    a.   Plaintiff was available at any time to begin work in D.C.

    b.   Plaintiff's resume did not limit her to a coaching role as she had a master's in business administration and was preparing to defend her doctoral dissertation in Organizational Leadership. *Id.*

19. On April 9, 2024, Ms. Porter acknowledged the email, stated she needed to review the information, and asked Plaintiff to review open positions on the Careers page for any she might be interested in. *Id.* at 16.

20. On April 9, 2024, Plaintiff informed Ms. Porter she applied to Job #JR17467 (Manager Non-Student Receivables), noting the salary was less than her Associate Coach role. *Id.*

21. On April 10, 2024, Plaintiff informed Ms. Porter she applied for Job #JR17567 (Executive Assistant-Cyber SMART Research Center). *Id.*

22. On April 18, 2024, eight days later, Ms. Porter informed Plaintiff she was going through open positions based on Plaintiff's resume and would send a list for review. *Id.* at 16.

    D.  Reasonable Accommodation Requests and Termination

23. On May 13, 2024, after receiving no communication from Defendant, Plaintiff emailed Ms. Porter seeking a status update on her reinstatement. *Id.* at 17.

24. On May 16, 2024, three days later, Ms. Porter apologized for the delay, asked for confirmation of Plaintiff's availability, and proposed four possible vacancies for Plaintiff to consider. *Id.*

25.  On May 16, 2024, Plaintiff responded, informing Ms. Porter that she was disabled and now pregnant and was mostly applying to remote or hybrid roles. *Id.* at 18

26.  On May 23, 2024, seven days later, Ms. Porter followed up, acknowledged Plaintiff's pregnancy, and sought clarification on Plaintiff's interest in only hybrid or telework positions. *Id.*

27.  The same day, May 23, 2024, Plaintiff responded, making her first reasonable accommodation request, expressing that due to her pregnancy and disabilities, she was only interested in hybrid or telework positions. *Id.*

28.  Plaintiff's May 23, 2024, email also expressed interest in the Admissions Recruiter role but believed she did not meet the qualifications for the roles Ms. Porter recommended. *Id.*

29.  Although Coach McKenzie and Plaintiff informed Ms. Porter of her disabilities, Ms. Porter did not instruct Plaintiff to complete any form for the reasonable accommodation request or seek any supplemental information regarding her disabilities.

30.  On November 21, 2024, Plaintiff emailed Ms. Porter again, having applied to the Coordinator, Student Athlete Services vacancy (JR19634), and was "very close to giving up", but Ms. Porter failed to respond to the November 21, 2024, email. *Id.* at 19.

31. On December 16, 2024, Plaintiff filed a complaint with the Department of Labor ("DOL") Veterans Employment and Training ("VETS") office for Defendant's nine-month failure to re-employ her under USERRA.

32. On December 18, 2024, after learning that Plaintiff filed a complaint with the DOL, Defendant began to re-engage Plaintiff's reasonable accommodation request and USERRA inquiry.

33. On December 18, 2024, the Plaintiff emailed Ms. Porter and cc'd the Director of Human Resources Business Partner, Sonya D. Sims, stating,

> It has now been 8 months since I first expressed my interest in returning to Georgetown University. Despite multiple attempts to follow up and secure a position, I have not been reinstated, and I have not received any updates regarding the positions I applied for. My last application was submitted for a position on November 15, 2024. I followed up with you, via email, on November 21, 2024 and on December 14, 2024. However, I have yet to receive any response or acknowledgment. I applied for several positions, both hybrid and in-person, and I remain open to any role that I qualify for. This lack of communication and resolution has been incredibly frustrating, as I have been actively waiting for an opportunity to return to Georgetown. The delay has also caused significant stress and uncertainty, as it directly impacts both my professional career and personal well-being.

Plaintiff asked Defendant to notify her if there were any missing documentation causing this delay. *Id.* at 31.

34. On December 18, 2024, the Defendant responded to the Plaintiff's email and acknowledged the December 14, 2024, email and requested the Plaintiff's availability. This email was first instance of Defendant communicating with Plaintiff in almost seven months (last communication from Defendant was on May 23, 2024). *Id.* at 33.

35. On or about January 14, 2025, on a phone call, Ms. Porter informed Plaintiff that even though Plaintiff possessed a master's in business administration, was preparing to defend her dissertation in organizational leadership, and was hired by Georgetown to be the Associate Head Coach of Georgetown's Track & Field/Cross Country team, she was not qualified for the Coordinator, Student Athlete Services role (JR19634).

36. On January 15, 2025, the Plaintiff shared that the phone call on January 14, 2025, "added to the stress of this already traumatic experience" and asked that going forwards, Ms. Porter coordinate any response regarding her USEERA complaint to the DOL Vets investigator from that point onward. *Id.* at 36.

37. On January 16, 2025, Ms. Porter acknowledged the Plaintiff's email and dismissing Plaintiff's request to coordinate with DOL Vets, asked to meet Plaintiff in a few days. *Id.* at 38.

38. On or about February 3, 2025, the Plaintiff communicated with the Defendant through Cynthia Lendoff, the DOL Vets investigator assigned to her case, and based on communication received from Ms. Lendoff, Plaintiff submitted another request for reasonable accommodation Defendant's Office of Institutional, Diversity, Equity, and Affirmative Action ("IDEAA"), citing multiple service-connected disabilities that limited her ability to perform the physically demanding coaching duties and requesting reassignment to a role aligned with her medical limitations. *Id.* at 54.

39. On February 10, 2025, due to Defendant's ongoing actions, Plaintiff filed a discrimination complaint against the Defendant with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 225.

40. On February 11, 2025, Plaintiff provided Defendant a copy of her VA Benefits Letter which expressly lists Plaintiff's disabilities and her NARSUM, a summary of the Department of Veteran's Affairs, medical board's disability evaluation of Plaintiff. *Id.* at

41. On March 14, 2025, Plaintiff's Health Care Provider provided Defendant additional medical documentation, confirming Plaintiff was still permanently disabled and that any reasonable accommodation should be hybrid or fully remote work. *Id.* at 51

42. March 31, 2025, the EEOC issued Plaintiff a Notice of Your Right to Sue letter, instructing Plaintiff she had 90 days to file a suit. The Notice of Your Right to Sue letter also cc'd Defendant so Defendant was aware of the Plaintiff's complaint to the EEOC.

43. On April 21, 2025, Defendant offered, as a reasonable accommodation, to reassign Plaintiff to the Business Administrator (#JR21264) role:

    a. The position was hybrid, generally requiring in-person attendance four days per week.

    b. The base salary was $71,027.30. *Id.* at 9.

44. On April 24, 2025, after Plaintiff accepted the offer and asked for further details regarding the in-person obligation, the Defendant withdrew the position without any interactive engagement with Plaintiff. Defendant stated, "In response to your request I will reach out to your medical provider…In addition, I conclude from your email [seeking further details] that you will not be accepting the Business Administrator position."

45. In response, on April 24, 2025, the Plaintiff stated, "I am not declining the Business Administration role" and to "clarify, yes, I accept the administrative role, however, I need to be cleared by my medical provider." Because of Defendant's consistent harassment towards Plaintiff, Plaintiff requested that DOL Vets be included in all correspondence, but Defendant denied the request. *Id.* at 85.

46. On April 29, 2025, Plaintiff received a Notification Letter for an IDEAA Complaint acknowledging two claims for investigation:

    a. Failure to engage in the interactive process regarding her military-related disability (April 2024 through May 2024).

    b. Failure to engage in the interactive process regarding her pregnancy-related disability (April 2024 through May 2024). *Id.* at 193.

47. On June 1, 2025, when interviewed by Defendant's IDEAA investigators, Defendant's Senior Director of Human Resources falsely blamed Plaintiff for its year long

delay on reinstating Plaintiff, even though she was aware that there was an almost seven-month period when Defendant was non-responsive to Plaintiff's emails.

48.   On June 4, 2025, in response to Defendant's false characterizations of the record, Plaintiff, engaging in the interactive process, wrote Defendant a substantive letter attempting her best to explain the factual history and her ongoing request for re-instatement and a reasonable accommodation, but Plaintiff failed to respond to it. *Id.*  at 66.

49. On June 27, 2025, less than 90 days from receipt of the EEOC's Notice of Plaintiff's Right to sue, Plaintiff filed this instant complaint.

50. Defendant's actions caused Plaintiff trauma and torture due to the constant disregard for her health, as she repeatedly failed to be reinstated at Georgetown University. Plaintiff experience with the Office of Human Resources were extremely overwhelming. The Office of Human Resources and IDEEA subjected Plaintiff to repeated delays, shifting expectations, prolonged delays, and periods of non-responsiveness, duplicative demands for medical information, and mischaracterization of Plaintiff's medical documentations and needs.

51. On September 22, 2025, Plaintiff received another offer to reassign her to the Learning & Development Coordinator role in Human Resources. *Id.* at 60.

52. On October 7, 2025, at Defendant's request, according to Defendant, Plaintiff submitted her third reasonable accommodation request, including documentation stating that due to her mental health condition, a position within the Human Resources Department would likely aggravate her symptoms and create a medically unsuitable work environment. *Id.* at 61.

53. On October 14, 2025, Plaintiff's mental health provider emailed Defendant, "I wanted to follow up to see if you require any additional information from me or if there are any updates you need at this time." Defendant never responded to the provider's email. *Id.* at 71.

54. On October 16, 2025, Plaintiff received a letter notifying her she was being terminated immediately and it was unnecessary for Defendant to engage in the interactive process with her any further. *Id.* at 60.

55. On October 16, 2025, Defendant gave Plaintiff 10 days to appeal her termination, and on October 25, 2025, Plaintiff timely appealed the termination. *Id.* at 60 and 70. As has been the pattern since her return from Military Leave, Defendant has not responded to Plaintiff's appeal.

56. From February 2023 until her termination, Plaintiff had not received any pay from the Defendant, despite being an employee.

   E.  Job Vacancies

57. Plaintiff applied for the following job vacancies:

   a. Events Planner, Tech & Safety, on March 14, 2025, JR21112-KM
   b. Communications and Marketing Manager-Graduate Student Communications, on March 14, 2025, JR21091;
   c. Department Administrator-Department of Psychology, on March 15, 2025, JR21065;
   d. Communications and Events Manager-Master of Science in Foreign Service Program, March 15, 2025, JR20791;
   e. Admissions Officer, March 24, 2025, JR21263;
   f. Business Administrator, March 24, 2025, JR21264;
   g. Education Coordinator-Georgetown University Medical Center, February 6, 2025, JR20761;
   h. Operations Manager Workers' Rights Institute-Georgetown University Law Center, April 19, 2024, JR17651;
   i. Administrative Project Coordinator- Vice Provost for Research, February 6, 2025, JR20347;
   j. Coordinator, Student Athlete Services-Department of Athletics, JR19634

k. Executive Assistant-Cyber SMART Research Center-Georgetown University Law Center, April 10, 2024, JR17567;
l. Manager, Non-Student Receivables-Office of the Chief Financial Officer-, April 8, 2024, JR17467;
m. Graduate Aid Program Manager, March 26, 2025, JR21248; and,
n. Associate Dean, Academic Affairs-School of Continuing Studies, March 26, 2025, JR20852.

58. Although Plaintiff applied to the 14 above-mentioned vacancies, and Defendant recommended her for those vacancies, she was only presented with two offers. In each of the two instances when Plaintiff asked a follow up question regarding an offer, the offer was immediately withdrawn.

IV.    DAMAGES

59. Plaintiff has suffered loss of wages, benefits, and career opportunities.

60.  Plaintiff experienced emotional distress, reputational harm, and financial loss.

61. Plaintiff is entitled to any relevant injunctive relief.

62. Georgetown's conduct was willful, entitling Plaintiff to back pay, front pay, compensatory, punitive, and liquidated damages, including attorneys' fees and court costs.

V. CLAIMS FOR RELIEF

**Count I, USERRA — Failure to Promptly Reemploy (§ 4312) and Failure to Place in the Appropriate Position (§ 4313), including § 4313(a)(3) disability related duties.**

63.  The foregoing paragraphs are realleged and incorporated by reference herein.

64.  Defendant was aware that Plaintiff timely notified it of her return from military leave.

65. Plaintiff provided Defendant written timely notice of her readiness and availability to return work.

66. Defendant violated Plaintiff's reemployment rights under USERRA by failing to promptly reinstate her to her Associate Head Coach position or a comparable role. Plaintiff

waited until Plaintiff filed a complaint with DOL Vets (which occurred nine months after notifying Defendant of her availability to work), before it began to engage her request to be reinstated.

67. Defendant failed to promptly respond to Plaintiff's repeated attempts to be reinstated as either an Associate Head Coach or a comparable role.

68. Defendant made no reasonable effort to accommodate Plaintiff's disabilities incurred or aggravated while in military service.

69. Defendant failed to reemploy Plaintiff in a position of equivalent seniority, status, and pay, to the escalator position, and never paid her a salary for the entirety duration of the disputed period.

70. Under 38 U.S.C. § 4312–4313, an employer must reinstate returning service members to the same or equivalent position. Defendant's extended delays and refusal to reinstate were willful and retaliatory.

**Count II – Violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117, and the District of Columbia Human Rights Act.**

71. The foregoing paragraphs are realleged and incorporated by reference herein.

72. Plaintiff has a physical (degenerative disc disease lower with intervertebral disc syndrome with spondylolysis) and mental (Post Traumatic Stress Disorder and migraines) impairment.

73. Plaintiff's disabilities impacted her ability to perform a major life activity, such as to work in person at Georgetown University.

74. At all relevant times, Defendant was aware of Plaintiff's disabilities, including Post Traumatic Stress Disorder, migraines, and degenerative disc disease lower with intervertebral disc syndrome with spondylolysis.

75. Plaintiff made three reasonable accommodation requests: (a) On May 23, 2024, Plaintiff expressed that due to her pregnancy, she was only interested in hybrid or telework positions; (b) On February 3, 2025, Plaintiff citing multiple service-connected disabilities that limited her ability to perform the physically demanding coaching duties and requesting reassignment to a role aligned with her medical limitations; and (c) On October 10, 2025, Plaintiff provided medical documentation stating that a position within the Human Resources Department would likely aggravate Plaintiff's disability and create a medically unsuitable work environment.

76. At all relevant times, Defendant was aware that Plaintiff possessed an Educational Doctorate in Organizational Leadership, an MBA in Leadership, a Graduate Certificate in Human Resources, a BA in English & Mass Communications along with over a decade of experience in coaching, teaching, and higher education administration, and these degrees were relevant to all of the roles to which she applied; therefore, Plaintiff could perform the essential functions for the roles she applied for and was qualified with or without an accommodation.

77. Defendant treated Plaintiff differently from similarly situated employees who were not disabled or who had different disabilities, when it denied her twelve out of fourteen times from being reassigned to a different vacant role, failed to pay Plaintiff any salary after she disclosed her disabilities to Defendant, and made no meaningful effort to engage in the interactive process with Plaintiff.

78. Instead of engaging in the interactive process, after Defendant's lengthy delays in responding to Plaintiff, on October 16, 2025, Defendant terminated the interactive process because Plaintiff provided Defendant a medical note expressing Defendant's need for a new reasonable accommodation.

79. Defendant has no undue hardship, so the statutory defense is absent § 12112(b)(5)(A).

80. Defendant failed to engage in the required interactive process and denied reasonable accommodation. Georgetown's actions violated the ADA's and DCHRA's obligation to provide accommodations unless undue hardship is proven.

**Count III – Violation of Pregnant Workers Fairness Act (42 U.S.C. § 2000gg-1 et seq.) and Protecting Pregnant Workers Fairness Act of 2014.**

81. The foregoing paragraphs are realleged and incorporated by reference herein.

82. In May 2024, Plaintiff disclosed to Defendant that she was pregnant and needed a reasonable accommodation, triggering protections under the PWFA and PPWFA.

83. At all relevant times, Defendant was aware Plaintiff was pregnant.

84. Defendant was aware of Plaintiff's multiple reasonable accommodation requests concerning her pregnancy in May 2024, February 2025, and October 2025.

85. Defendant failed to engage in timely, good faith interactive process once aware of the disability and accommodation need.

86. Defendant never identified any specific undue hardship, so the statutory defense is absent.

87. Defendant failed to accommodate Plaintiff's pregnancy-related limitations and did not offer reasonable alternatives. The PWFA and PPWFA mandates employers to provide accommodations for known limitations related to pregnancy unless undue hardship is demonstrated.

88. Defendant treated Plaintiff differently than other similarly situated employees.

**Count IV – Discrimination Based on Sex, Disability, and Pregnancy (Title VII) Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17, and DCHRA.**

89. The foregoing paragraphs are realleged and incorporated by reference herein.

90. At all relevant times, Defendant was aware of Plaintiff's protected class as a disabled (disability) woman (sex) and a pregnant (disability) veteran.

91. Plaintiff's termination was an adverse personnel action, and Defendant treated similarly situated non-pregnant/non-female employees more favorably, and/or decisionmakers made statements evidencing discriminatory animus.

92. Defendant's actions were influenced by Plaintiff's status as a disabled woman and a pregnant veteran, in violation of Title VII of the Civil Rights Act of 1964 and DCHRA.

**Count V – Retaliation (USERRA)**

93. The foregoing paragraphs are realleged and incorporated by reference herein.

94. Defendant was aware that on December 17, 2024, Defendant filed a complaint with the Department of Labor.

95. Defendant was aware that the allegations raised in the complaint were about Defendant's failure to accommodate and violations under USERRA.

96.  Defendant failed to timely reemploy Defendant, even though it was statutorily obligated to do it.

97.  Defendant retaliated against Plaintiff for filing federal complaints, requesting accommodations, and asserting her statutory rights.

98.  Within days of making her third reasonable accommodation request, on October 16, 2025, Defendant terminated Plaintiff, and refused to respond to Plaintiff's October 25, 2025, appeal of the termination.

99.  The retaliation included Defendant never reemploying Plaintiff, withholding her pay and benefits, and ultimately culminated in Plaintiff's termination in October 2025.

**Count VI Retaliation American Disability Act and DCHRA**

100.  The foregoing paragraphs are realleged and incorporated by reference herein.

101.  Defendant was aware that Plaintiff filed a complaint with the Department of Labor and the EEOC.

102.  Defendant was aware of Plaintiff's multiple reasonable accommodation requests in May 2024, February 2025, and October 2025.

103.  Defendant was aware that the allegations raised in Plaintiff's complaints were about Defendant's failure to accommodate and violations under the American Disability Act ("ADA") and DCHRA.

104.  Defendant failed to engage in timely, good faith interactive process once aware of the disability and accommodation need.

105. Defendant retaliated against Plaintiff for filing federal complaints, requesting accommodations, and asserting her statutory rights.

106.  Within days of making her third reasonable accommodation request, on October 16, 2025, Defendant terminated Plaintiff, and refused to respond to Plaintiff's October 25, 2025, appeal of the termination.

107.  The retaliation included Defendant never reemploying Plaintiff, withholding her pay and benefits, and ultimately culminated in Plaintiff's termination in October 2025.

**Count VII Retaliation PWFA and PPWFA**

108.  The foregoing paragraphs are realleged and incorporated by reference herein.

109.  Defendant was aware that Plaintiff filed a complaint with the Department of Labor.

110.  Defendant was aware of Plaintiff's pregnancy and Defendant's failure to accommodate and violations under PWFA and PPWFA.

111.  Defendant retaliated against Plaintiff for filing federal complaints, requesting accommodations, and asserting her statutory rights.

112.  Within days of making her third reasonable accommodation request, on October 16, 2025, Defendant terminated Plaintiff, and refused to respond to Plaintiff's October 25, 2025, appeal of the termination.

113.  The retaliation included Defendant never reemploying Plaintiff, withholding her pay and benefits, and ultimately culminated in Plaintiff's termination in October 2025.

**Count VIII Retaliation Title VII of the Civil Rights Act and DCHRA**

114.  The foregoing paragraphs are realleged and incorporated by reference herein.

115.  Defendant was aware that Plaintiff filed a complaint with the Department of Labor (December 2024) and the EEOC (March 2025).

116. Defendant was aware that the allegations raised in those complaints were about Defendant's failure to accommodate and violations under USERRA, ADA, Title VII of the Civil Rights Act, DCHRA, and PPWFA.

117. Defendant retaliated against Plaintiff for filing federal complaints, requesting accommodations, and asserting her statutory rights.

118. Within days of making her third reasonable accommodation request, on October 16, 2025, Defendant terminated Plaintiff, and refused to respond to Plaintiff's October 25, 2025, appeal of the termination.

119. The retaliation included Defendant never reemploying Plaintiff, withholding her pay and benefits, and ultimately culminated in Plaintiff's termination in October 2025.

IX. PRAYER FOR RELIEF

120. Declare that Defendant violated Uniformed Services Employment and Reemployment Rights Act (USERRA), Americans with Disabilities Act (ADA), Pregnant Workers Fairness Act (PWFA), Title VII of the Civil Rights Act of 1964 (sex)(disability)(pregnancy), District of Columbia Human Rights Act (DCHRA), and )Protecting Pregnant Workers Fairness Act of 2014 (PPWFA.

121. Award Plaintiff back pay, front pay, benefits, seniority restoration, (USERRA, ADA, PWFA, Title VII, DCHRA, and PPWFA); pre- and post-judgment interest, and other monetary relief as appropriate.

122. Award liquidated damages under USERRA.

123. Award Compensatory damages (ADA, PWFA, Title VII, DCHRA, and PPWFA) and punitive damages as permitted by law for emotional distress and retaliation.

124.    An order requiring Defendant to immediately reinstate Plaintiff and enjoin Defendant from taking any further adverse personnel actions against Plaintiff without providing appropriate procedural and substantive rights as required by law.

125.    Reassignment and/or reasonable accommodations under the ADA, PWFA, DCHRA, and PPWFA; policy revisions; manager training; and purging of adverse records.

126.    An award of the costs of this action, expert fees, and reasonable attorneys' fees and costs.

127.    Grant any other relief the Court deems just and proper.

X. JURY DEMAND
128.    Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Blackman Law Group PLLC

By:  _/s/ Roland Blackman__
Roland Blackman
Bar No. 657328
Address:  405 Richton Ct. Upper
Marlboro, MD 20774
Phone No.:  410-621-7545
Email:  Roland@BLGLawyer.com
Attorney for Plaintiff Kaymarie Williams

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **KAYMARIE WILLIAMS,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GEORGETOWN UNIVERSITY,**<br><br>**Defendant.** | **}**<br>**}**<br>**}**<br>**}**<br>**}**<br>**}**<br>**}   CIV. ACTION NO. 1:25-cv-02034**<br>**}**<br>**}   THE HONORABLE ANA C. REYES**<br>**}**<br>**}**<br>**}**<br>**}** |

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the January 13, 2026, I served the foregoing PLAINTIFF'S THIRD AMENDED COMPLAINT TO DEFENDANT GEORGETOWN UNIVERSITY upon all parties in the above-entitled action via email.

Respectfully submitted this 13th day of January, 2026.

Blackman Law Group PLLC

By:  _/s/ Roland Blackman_____
Roland Blackman
Bar No. 657328
Address:  405 Richton Ct. Upper
Marlboro, MD 20774
Phone No.:  410-621-7545
Email:  Roland@BLGLawyer.com
Attorney for Plaintiff Kaymarie Williams